15-1536 (L)
John Doe v. Columbia University

1   **UNITED STATES COURT OF APPEALS**
2   **FOR THE SECOND CIRCUIT**
3
4   August Term, 2015
5
6   (Argued:      April 12, 2016              Decided:      July 29, 2016)
7
8   Docket Nos. 15-1536 (Lead), 15-1661 (XAP)
9   ------------------------------------------------------------X
10  JOHN DOE
11              *Plaintiff-Appellant-Cross-Appellee*,
12  v.
13  COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY
14              *Defendants-Appellees-Cross-Appellants*.
15  ------------------------------------------------------------X
16
17  Before:      LEVAL, DRONEY, Circuit Judges; KOELTL, District Judge.[1]
18
19          Plaintiff John Doe appeals from a judgment of the United States District
20  Court for the Southern District of New York (Furman, *J.*), which granted
21  Defendant Columbia University's motion to dismiss Plaintiff's complaint for
22  failure to state a sufficient claim. The complaint alleged that Defendant violated
23  Title IX of the Education Amendments of 1972 and state law by practicing sex bias
24  in disciplining him for an alleged sexual assault. The complaint meets the low
25  burden of alleging facts supporting a minimal plausible inference of bias. We
26  therefore vacate the judgment and remand.
27
28          VACATED and REMANDED.
29

---

[1] The Honorable John G. Koeltl of the United States District Court for the Southern
District of New York, sitting by designation.

1

15-1536 (L)
John Doe v. Columbia University

| | |
|---|---|
| 1 | PHILIP A. BYLER, NESENOFF & |
| 2 | MILTENBERG, LLP, New York, NY, |
| 3 | (Andrew T. Miltenberg, *on the brief*), for |
| 4 | *Plaintiff-Appellant-Cross-Appellee.* |
| 5 | |
| 6 | PAUL R.Q. WOLFSON, WILMER |
| 7 | CUTLER PICKERING HALE AND DORR |
| 8 | LLP, Washington, DC, (Bruce M. Berman, |
| 9 | Saurabh Sanghvi, Alan E. Schoenfeld, *on* |
| 10 | *the brief*), for *Defendants-Appellees-Cross-* |
| 11 | *Appellants.* |
| 12 | |

13    Leval, *Circuit Judge*:

14

15          Plaintiff, a Columbia University student who is identified by the pseudonym

16    John Doe, appeals from the judgment of the United States District Court for the

17    Southern District of New York (Furman, *J.*), dismissing his amended complaint

18    ("the Complaint") under Fed. R. Civ. P. 12(b)(6) "for failure to state a claim on

19    which relief can be granted." The Complaint alleges that Defendant Columbia

20    University[2] violated Title IX of the Education Amendments of 1972, 20 U.S.C. §

21    1681 *et seq.* ("Title IX"), and state law, by acting with sex bias in investigating

22    him and suspending him for an alleged sexual assault. We conclude that the

23    Complaint meets the low standard described in *Littlejohn v. City of New York*, 795

---

[2] Although the Trustees of Columbia University are also Defendants in this action, we generally use "Defendant" hereinafter to refer to Columbia University.

15-1536 (L)
John Doe v. Columbia University

1    F.3d 297 (2d Cir. 2015), of alleging facts giving rise to a plausible minimal

2    inference of bias sufficient to survive a motion to dismiss, which we hold applies

3    in Title IX cases. We therefore VACATE the judgment and REMAND.

4    **I.    Factual Background**

5          On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a

6    claim, the only facts to be considered are those alleged in the complaint, and the

7    court must accept them, drawing all reasonable inferences in the plaintiff's favor,

8    in deciding whether the complaint alleges sufficient facts to survive. *See DiFolco*

9    *v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). Furthermore, the

10   plaintiff is at liberty to plead different theories, even if they are inconsistent with

11   one another, and the court must accept each sufficiently pleaded theory at face

12   value, without regard to its inconsistency with other parts of the complaint. *See*

13   Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has,

14   regardless of consistency."); *Gregory v. Daly*, 243 F.3d 687, 701 n.12 (2d Cir.

15   2001). Needless to say, the facts a plaintiff alleges in the complaint may turn out to

16   be self-serving and untrue. But a court at this stage of our proceeding is not

17   engaged in an effort to determine the true facts. The issue is simply whether the

18   facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim. For

19   that reason, the court, in judging the sufficiency of the complaint, must accept the

15-1536 (L)
John Doe v. Columbia University

1   facts alleged and construe ambiguities in the light most favorable to upholding the

2   plaintiff's claim. If the complaint is found to be sufficient to state a legal claim, the

3   opposing party will then have ample opportunity to contest the truth of the

4   plaintiff's allegations and to offer its own version. In light of those rules, we set

5   forth below facts alleged in Plaintiff's Complaint in the light most favorable to him,

6   drawing reasonable inferences in his favor.

7       **a.  The Sexual Encounter between Plaintiff and Jane Doe**

8           On the night of May 12, 2013, Plaintiff, a male Columbia freshman who

9   upon completing his freshman year became a varsity athlete, was studying for a

10  final exam in his residence hall. At approximately 1:00 a.m. a female classmate

11  and member of the same circle of friends, identified in this litigation by the

12  pseudonym Jane Doe, approached him and initiated a conversation. They took an

13  hour-long walk together, and eventually began discussing the topic of "hooking

14  up." The Complaint alleges that, in the interest of privacy for a sexual encounter,

15  Jane suggested using the bathroom of her dormitory's suite. She insisted on using

16  her suite rather than his because her ex-boyfriend was Plaintiff's roommate. She

17  told Plaintiff to wait in the bathroom while she went to her bedroom to retrieve a

18  condom. She then undressed herself in the bathroom, and they proceeded to have

4

15-1536 (L)
John Doe v. Columbia University

1    sex. Over the next two weeks, Jane contacted Plaintiff twice to express doubts

2    about how their friends would react.

3                    **b. Jane Doe's Complaint and Defendant's Investigation**

4            After the start of the next school year, on September 24, 2013, Rosalie Siler,

5    Defendant's Assistant Director for Gender-Based and Sexual Misconduct,

6    contacted Plaintiff to inform him that a fellow student had made allegations of

7    sexual assault against him, and advised him to come in for a meeting. The next

8    day, Plaintiff met with Siler, who gave him a formal written notice that he was

9    charged with "Non-Consensual Sexual Intercourse" in violation of the school's

10   Gender-Based Misconduct Policies for Students ("GBMPS"), which established

11   procedures for responding to allegations of sexual assault on campus. He was told

12   that, as a consequence of Jane Doe's accusation, the University had issued an order

13   barring him from contact with her and restricting his access to residence halls on

14   campus. Although Plaintiff was advised that he was entitled to access the on-

15   campus Counseling & Psychological Services, he was not advised of other sources

16   of support during the disciplinary process.

17           Plaintiff was summoned to meet on September 25, 2013, with the Columbia

18   Title IX investigator, Jilleian Sessions-Stackhouse, who Plaintiff alleges, referring

19   to her prior experience, was not gender neutral. In her role as Title IX investigator,

15-1536 (L)
John Doe v. Columbia University

1    Sessions-Stackhouse was "charged with creating the narrative account that is

2    eventually adopted by the [disciplinary] panel." A 90. Plaintiff told Sessions-

3    Stackhouse that the encounter had been consensual and that there had been

4    witnesses at the residence hall lounge that night who could be helpful. The

5    Complaint alleges that Sessions-Stackhouse's response was hostile. She did not ask

6    him about the witnesses, interview them, or follow up with them in any way.[3]

7    According to Plaintiff, "[a]t all times, [he] was under the impression that Ms.

8    Sessions-Stackhouse would investigate and follow up on [his] account of the

9    evening once he conveyed his side of the story; [but] as it turns out, that never

10   happened." A 89.

11        According to the Complaint, Sessions-Stackhouse's questioning of Plaintiff

12   was akin to cross-examination calculated to elicit a confession. She failed to tell

13   him he could submit his own written statement to her or to the disciplinary panel,

14   and failed also to advise him that he was entitled to seek the support of a student

15   advocate. Nor did she advise him of resources available to him to aid him in the

16   process.

-------

[3] The Complaint later acknowledged that Sessions-Stackhouse interviewed at least one witness identified by Doe.

15-1536 (L)
John Doe v. Columbia University

1     Plaintiff alleges in contrast, upon information and belief, that, in meeting

2   with Jane Doe, Sessions-Stackhouse took a narrative account without leading

3   questions and without hostility, giving Jane thorough advice as to the resources

4   available to her. The interviews conducted by Sessions-Stackhouse were not

5   recorded. She took handwritten notes.

6     On October 21, 2013, Plaintiff reported to Siler that Jane Doe's friends had

7   harassed and assaulted him on campus. Siler "did not take [his] complaint . . .

8   seriously." A 91-92.

9     On October 22, 2013, Plaintiff met with Sessions-Stackhouse to review her

10  notes from their previous meeting. He "observed that [her] notes inaccurately and

11  inadequately paraphrased [Plaintiff's] verbal account of the events." A 92. On

12  January 25, 2014, Plaintiff met with Interim Assistant Director, Deputy Title IX

13  Coordinator Virginia Ryan (Siler's replacement) to review Sessions-Stackhouse's

14  report.

15    According to the Complaint, the report falsely depicted Plaintiff as having

16  inflicted nonconsensual sex on Jane Doe, by virtue of having coercively pressured

17  her over a period of weeks to have sex with him.[4] The report showed that Sessions-

_____

[4] While the Complaint does not explicitly allege what Sessions-Stackhouse wrote in her

15-1536 (L)
John Doe v. Columbia University

1    Stackhouse had disregarded Plaintiff's account of Jane Doe's clearly expressed

2    consent, and failed to reconcile Jane's account with conflicting information

3    provided to Sessions-Stackhouse by India Knight, who was a friend of Jane's,

4    about Jane's motivation on May 12. The report also allegedly failed to include

5    statements of persons, including Jane's roommate, "who had occasion to witness

6    Jane Doe in the weeks before" the encounter as well as on that night. A 104-05, 95.

7    Plaintiff attempted to correct Sessions-Stackhouse's mistakes. Ryan gave Plaintiff

8    a form to state his response, which he completed and returned on January 29, 2014.

9         Soon thereafter, Ryan provided Plaintiff with a hearing date of February 12

10   and gave him a list of the panelists. According to Plaintiff, at no point during the

11   investigative process did Sessions-Stackhouse, or any administrator, advise him

12   that he was entitled to seek advice and counsel from his Dean of Students.

13            **c.  Criticisms of Columbia Among Students and in the Press for**
14                 **its Previous Lenient Handling of Sexual Assault Complaints**
15
16        In the period preceding Plaintiff's disciplinary hearing, Columbia students

17   had expressed concern that the University did not take seriously the complaints of

18   female students about sexual assaults by male students. Various student

---

report, it can be fairly inferred that the report took the position that Plaintiff coerced Jane into sex
by weeks of pressure, and that her participation was deemed to be without consent by reason of
the prior pressure.

15-1536 (L)
John Doe v. Columbia University

1   organizations had "alleged that the school [was] not being firm enough in the

2   disciplinary process" in cases involving accusations by female students of sexual

3   misconduct by male students. A 97. This controversy reached the press. On

4   December 11, 2013, a New York Post article declared, "Columbia drops ball on

5   jock 'rapist' probe: students." *Id.* The article quoted several female students

6   asserting that Columbia had mishandled their sexual assault complaints, failing to

7   act with expediency in investigating, giving lenient sanctions, and conveying an

8   overall tenor of "dismissal" with regard to the serious nature of the complaints.

9   The article stated that the University's Presidential Advisory Committee on Sexual

10  Assault intended to schedule a meeting with the Columbia University Student

11  Democrats to learn more directly about student concerns and explore possible next

12  steps.

13          On campus, the Columbia University Democrats had criticized the

14  University's handling of sexual assault complaints and called for reforms. Sarah

15  Weinstein, the Membership Director of that student organization, had written

16  opinion articles calling for increased transparency at the school, and had

17  spearheaded a petition to request statistics on sanctions issued by Defendant in

18  sexual assault cases. Referring to reports that Yale University had given light

19  punishments to male students found to have raped or assaulted female students,

9

15-1536 (L)
John Doe v. Columbia University

1    Weinstein was quoted in articles as saying, "[W]e want to make sure that what's

2    happening at Yale isn't happening here at Columbia." A 98.

3        On January 23, 2014, an independent, student-run newspaper criticized

4    Columbia's handling of sexual assault complaints, discussing the experiences of

5    three alleged sexual assault victims "in an effort to highlight how the university's

6    internal investigation allowed [an] accused student athlete to escape punishment."

7    The articles particularly criticized Sessions-Stackhouse for "inadequate

8    investigation[s]." A 99. In February 2014 (close to the time of Plaintiff's hearing)

9    Columbia University President Lee Bollinger promised to hold a Town Hall

10   meeting on the school's handling of sexual misconduct. Columbia Dean James

11   Valentini was scheduled to attend the meeting.

12       On April 24, 2014, twenty-three students filed complaints with the United

13   States Department of Education for violations of Title IX and other laws, alleging

14   that Defendant mishandled incidents of sexual assault and misconduct on campus.

15                **d. Columbia's Policies for Addressing Sexual Assault**

16       Columbia's policy on gender-based misconduct (the GBMPS) provided that

17   a student accused of sexual assault would be given notice of the complaint and

18   written notice of the allegations, as well as an opportunity to meet with the

19   Assistant Director for Student Services for Gender-Based and Sexual Misconduct

10

15-1536 (L)
John Doe v. Columbia University

1   to review the GBMPS policy and procedures. A specially trained Title IX

2   investigator (Sessions-Stackhouse) would then interview "the complainant,

3   respondent, and any witnesses," "gather any pertinent documentation," and

4   "prepare a report detailing the relevant [findings]." A 178. If the investigator found

5   "reasonable suspicion," then the respondent and complainant would "each have the

6   opportunity to review the investigative report and . . . documentation." A 179. If

7   the respondent denied responsibility or did not respond, a hearing panel would be

8   convened.

9          Hearings were to be closed proceedings. The hearing panels, when

10  practicable, would consist of two deans and/or senior-level administrators and one

11  student drawn from a specially trained pool. A party could challenge a panelist's

12  participation in writing. During the hearing, only the panel would call and question

13  parties and witnesses, but parties could submit questions, which the panel would

14  have discretion to decline to ask if it found them irrelevant or duplicative. Panels

15  were to base their decisions on a "preponderance of [the] evidence" standard of

16  proof. A 181. Decisions were to be made within five business days, and the Dean

17  of Students would render a decision five business days later. Sanctions could range

18  from a warning to suspension to full dismissal. Respondents had the right to an

19  appeal.

11

15-1536 (L)
John Doe v. Columbia University

1        **e.  The Disciplinary Hearing and Plaintiff's Suspension**

2        Plaintiff's disciplinary hearing took place on February 12, 2014, before three

3    panelists—the Director of the Office of Disability Services at Barnard College, the

4    Associate Director for Residential Life and Housing at Barnard College, and a

5    graduate student at the Columbia School of Public Health. Ryan and her assistant

6    were also present. Plaintiff brought his roommate. Jane Doe was accompanied by

7    Weinstein, who had been among the most vocal critics of the University's prior

8    handling of rape complaints. Weinstein was not Jane's friend, and had no prior

9    relationship with her. Columbia's rules did not allow the accused student legal

10   representation.

11       There were three rooms set up for the hearing—one for the panelists, one for

12   Plaintiff, and one for Jane Doe. In each room, a television was set up with a live

13   video feed of the hearing so that each participant had the opportunity to watch at

14   all times.

15       At the start of the hearing, the panelists asked Plaintiff to make a statement.

16   Because Sessions-Stackhouse allegedly had not told Plaintiff he would be called on

17   to make a statement, he had nothing prepared and merely stated that he "did

18   nothing wrong." A 101-02.

15-1536 (L)
John Doe v. Columbia University

1      At the hearing, the panel considered Sessions-Stackhouse's report, which did

2   not include reference to witnesses who could have supported Plaintiff's defense,

3   allegedly because Sessions-Stackhouse had declined to follow the leads Plaintiff

4   had given her. The panel did not call witnesses who could have supported

5   Plaintiff's defense. Plaintiff submitted questions to the panelists to be put to Jane

6   Doe, but they did not allow him to exhaust his list, asserting that the questions

7   were "irrelevant." A 103.

8      The hearing lasted less than two hours. The panelists found Plaintiff

9   "Responsible" for the charge of "sexual assault: non-consensual sexual

10  intercourse." A 104. Although Plaintiff denied having coerced Jane Doe and

11  alleged that no evidence was presented in support of such coercion, the panel

12  found that Plaintiff had "directed unreasonable pressure for sexual activity toward

13  the Complainant over a period of weeks" and that "this pressure constituted

14  coercion [so that] the sexual intercourse was without consent." A 104.

15     On February 26, 2014, Plaintiff was informed that Columbia was issuing an

16  order of suspension until Fall 2015. Because the University refused to give

17  Plaintiff credit for his Spring 2014 classes, the suspension was functionally

18  equivalent to one and one half years. Plaintiff stated that on the same day, he saw

13

15-1536 (L)
John Doe v. Columbia University

1    Jane Doe, who called out to him that she was "sorry" and that she was going to get

2    his punishment lessened. A 105.

3          Plaintiff was advised of his right to appeal within five business days. On

4    March 3, 2014, Plaintiff appealed, citing, among other things, Sessions-

5    Stackhouse's failure to interview key student witnesses. Jane Doe also submitted

6    an appeal to reduce the severity of Plaintiff's punishment.

7          On March 10, 2014, Dean Valentini denied Plaintiff's appeal, explaining in

8    part that Sessions-Stackhouse's failure to interview "key witnesses" identified by

9    Plaintiff was within her discretion, that such witnesses were "not raised with Ms.

10    Sessions-Stackhouse and were 'raised for the first time on appeal,'" and that

11    Plaintiff's coercive behavior "was committed outside the purview of other

12    witnesses, and, thus, such witnesses' testimonies were insufficient." A 107. The

13    Dean concluded that the sanction was appropriate because sexual assault is an

14    egregious offense. Dean Valentini's denial of Plaintiff's appeal occurred four days

15    prior to the University-wide meeting for discussion of the school's handling of

16    such complaints, which the Dean was scheduled to attend.

17          **f.  Proceedings Below**

18          Plaintiff filed his suit on June 9, 2014, alleging that Columbia subjected him

19    to sex discrimination in violation of Title IX and state law. The Complaint seeks

15-1536 (L)
John Doe v. Columbia University

1    both damages and expungement of his disciplinary record. It alleges that Sessions-

2    Stackhouse, in the role of the University's supposedly neutral Title IX investigator,

3    was motivated by pro-female sex bias, attributable in part to a desire to refute

4    criticisms of herself and of the University for their past handling of similar

5    complaints, to perform her duties in a manner that discriminated against the

6    accused male. The Complaint alleges that she conducted a sex-biased and deficient

7    investigation that was hostile to his claim, failed to carry out her duty to interview

8    his witnesses and explore channels that could be helpful to him, failed to advise

9    him of his rights, and drew unfair and incorrect conclusions against him in her

10   report to the adjudicatory panel. The Complaint alleges also that the University's

11   decision-makers (the panel and the Dean), seeking to protect the University from

12   criticism both among students and the public to the effect that it was not taking

13   women's sexual assault complaints seriously, took a pro-female, sex-biased stance

14   on Jane Doe's allegations, leading them to decide against him, incorrectly and

15   contrary to the weight of the evidence.

16         The district court granted Columbia's motion to dismiss the federal law

17   claims. The court also "declin[ed] to exercise supplemental jurisdiction" over

18   Plaintiff's state-law claims. A 223. Plaintiff then brought this appeal.

19

15-1536 (L)
John Doe v. Columbia University

**DISCUSSION**

1
2
3 **I. Title IX**

4     Title IX's relevant portion provides, "No person in the United States shall,

5 *on the basis of sex*, be excluded from participation in, be denied the benefits of, or

6 *be subjected to discrimination* under any education program or activity receiving

7 Federal financial assistance." 20 U.S.C. § 1681(a) (emphases added). This

8 provision, which is enforceable through an implied private right of action, was

9 enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination

10 in the workplace and in universities. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d

11 Cir. 1994). Because Title IX prohibits (under covered circumstances) subjecting a

12 person to discrimination on account of sex, it is understood to "bar[] the imposition

13 of university discipline where gender is a motivating factor in the decision to

14 discipline." *Id.* at 715.

15 **II. Standard of Review**

16     A court of appeals reviews *de novo* a district court's grant of a motion under

17 Rule 12(b)(6) to dismiss a complaint for "failure to state a claim upon which relief

18 can be granted." *Littlejohn*, 795 F.3d at 306.

19

15-1536 (L)
John Doe v. Columbia University

1                **a.  Standard for Judging the Sufficiency of a Complaint Alleging**
2                       **Discrimination under Title IX**
3
4        In a series of cases beginning with *McDonnell Douglas Corp. v. Green*, 411

5        U.S. 792 (1973),[5] the Supreme Court ruled that, in suits alleging employment

6        discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title

7        VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and related statutes, until the

8        defendant furnishes a nondiscriminatory reason for the adverse action it took

9        against the plaintiff, the plaintiff needs to present only minimal evidence

10      supporting an inference of discrimination in order to prevail. *See McDonnell*

11      *Douglas*, 411 U.S. at 802.

12        As set forth in our recent explanation of *McDonnell Douglas*'s standard,

13             [I]n the initial phase of the case, the plaintiff can establish a prima
14             facie case without evidence sufficient to show discriminatory
15             motivation . . . . If the plaintiff can show (1) that she is a member of a
16             protected class; (2) that she was qualified for employment in the
17             position; (3) that she suffered an adverse employment action; and, in
18             addition, has (4) some minimal evidence suggesting an inference that
19             the employer acted with discriminatory motivation,[6] such a showing

---

[5] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

[6] The "minimal evidence suggesting an inference that the employer acted with discriminatory motivation" can be satisfied by as little as a showing that the position sought by the plaintiff remained open after plaintiff's rejection and that the employer

15-1536 (L)
John Doe v. Columbia University

1    will raise a temporary "presumption" of discriminatory motivation,
2    shifting the burden of production to the employer and requiring the
3    employer to come forward with its justification for the adverse
4    employment action against the plaintiff. However, once the employer
5    presents evidence of its justification for the adverse action, joining
6    issue on plaintiff's claim of discriminatory motivation, the
7    presumption "drops out of the picture" and the *McDonnell Douglas*
8    framework "is no longer relevant." At this point, in the second phase
9    of the case, the plaintiff must demonstrate that the proffered reason
10   was not the true reason (or in any event not the sole reason) for the
11   employment decision, which merges with the plaintiff's ultimate
12   burden of showing that the defendant intentionally discriminated
13   against her.
14
15   *Littlejohn*, 795 F.3d at 307-08 (internal citations omitted).
16
17        With respect to the sufficiency of federal complaints generally, the

18   Supreme Court ruled in *Ashcroft v. Iqbal*, 556 U.S. 662, (2009),[7] that a

19   complaint must plead specific facts sufficient to support a plausible

20   inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

21   While "[t]he plausibility standard is not akin to a 'probability requirement,' .

22   . . it asks for more than a sheer possibility that a defendant has acted

23   unlawfully." *Id.*

_____

continued to seek applicants from persons of plaintiff's qualifications. *See McDonnell Douglas*, 411 U.S. at 802.

   [7] *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

15-1536 (L)
John Doe v. Columbia University

1      In *Littlejohn*, we clarified that *Iqbal* applies to employment-

2    discrimination complaints brought under Title VII. "To the same extent that

3    the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff

4    would need to *show* to defeat a motion for summary judgment prior to the

5    defendant's furnishing of a non-discriminatory motivation, that presumption

6    also reduces the facts needed to be *pleaded* under *Iqbal*." *Littlejohn*, 795

7    F.3d at 310. Because "[t]he discrimination complaint, by definition, occurs

8    in the first stage of the litigation . . . the complaint also benefits from the

9    temporary presumption and must be viewed in light of the plaintiff's

10   minimal burden to show discriminatory intent." *Id.* at 311.

11     In other words, at the 12(b)(6) stage of a Title VII suit, allegation of facts

12   supporting a minimal plausible inference of discriminatory intent suffices as to this

13   element of the claim because this entitles the plaintiff to the temporary

14   presumption of *McDonnell Douglas* until the defendant furnishes its asserted

15   reasons for its action against the plaintiff.[8]

---

[8]For this reason, we have often vacated 12(b)(6) and 12(c) dismissals of complaints
alleging discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir.
2015) (vacating 12(c) dismissal of Title VII claim because the district court held Plaintiff to
overly stringent pleading standards); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d
Cir. 2015) (summary order) (vacating 12(b)(6) dismissal of Plaintiff's complaint); *Azkour v.
Bowery Residents' Comm., Inc.*, 2016 WL 1552367, *2 (2d Cir. 2016) (summary order); *Osby v.*

15-1536 (L)
John Doe v. Columbia University

1    A further question we now face is whether the burden-shifting framework

2    established by the *McDonnell Douglas* line of cases for claims of discrimination on

3    account of race, religion, or national origin under Title VII, and the associated

4    pleading burden we articulated in *Littlejohn*, apply also to Title IX claims alleging

5    discrimination on account of sex in education programs or activities that receive

6    federal support. These claims have so much in common that, at least on certain

7    sorts of facts, rules the Supreme Court established for Title VII litigation appear to

8    apply also to such similar claims of sex discrimination under Title IX. *See Yusuf*,

9    35 F.3d at 714 ("[C]ourts have interpreted Title IX by looking to . . . the caselaw

10   interpreting Title VII."). In several prior cases, we have applied Title VII's

11   framework and principles to Title IX claims. *See Weinstock v. Columbia Univ.*,

12   224 F.3d 33, 42 n.1 (2d Cir. 2000) (explaining that the Title VII framework applies

13   to employment discrimination claims brought under Title IX); *Murray v. N.Y.*

14   *Univ. Coll. of Dentistry*, 57 F.3d 243, 248-49 (2d Cir. 1995) (stating that Title VII

15   standards should be applied in determining a university's liability for a student's

16   claim of sexual harassment under Title IX); *see also Papelino v. Albany Coll. of*

---

*City of New* York, 633 F. App'x 12, 13 (2d Cir. 2016) (summary order). We have also cautioned
district courts against imposing too high a burden on plaintiffs alleging discrimination at the
12(b)(6) stage. *See Dawson*, 624 F. App'x at 770 ("At the pleading stage, district courts would
do well to remember this exceedingly low burden that discrimination plaintiffs face . . . .").

15-1536 (L)
John Doe v. Columbia University

1    *Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (stating that "[i]n

2    [certain] respects, a Title IX sex discrimination claim requires the same kind of

3    proof required in a Title VII sex discrimination claim," and applying Title VII

4    standards to two sexual harassment claims).

5         While we did not explicitly state in *Yusuf* that we were incorporating

6    *McDonnell Douglas*'s burden-shifting framework into Title IX jurisprudence, we

7    did state, after discussing the plaintiff's allegations, that "[s]imilar allegations, if

8    based on race in employment decisions, would more than suffice in a Title VII

9    case, and we believe they easily meet the requirements of Title IX." *Yusuf*, 35 F.3d

10   at 716. We also adopted Title VII's requirement of proof of discriminatory intent,

11   and stated that "[a]llegations of a causal connection in the case of university

12   disciplinary cases can be of the kind that are found in the familiar setting of Title

13   VII cases." *Id.* at 714-15. *Yusuf* made clear that Title VII cases provide the proper

14   framework for analyzing Title IX discrimination claims.[9] We therefore hold that

_____

[9] Our court has extended the *McDonnell Douglas* burden-shifting framework to several other statutory schemes. *See, e.g.*, *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999) (applying the framework to racial discrimination claims brought under 42 U.S.C. §§ 1981 and 1983); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 & n.2 (2d Cir. 2009) (applying the framework to the Age Discrimination in Employment Act of 1967 (ADEA), with the distinction that an ADEA plaintiff must demonstrate that age was a but-for, and not merely a motivating, factor), *superseded by statute on other grounds*; *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (applying the framework to Fair Housing Act disparate treatment claims).

15-1536 (L)
John Doe v. Columbia University

1    the temporary presumption afforded to plaintiffs in employment discrimination

2    cases under Title VII applies to sex discrimination plaintiffs under Title IX as well.

3        Thus, a complaint under Title IX, alleging that the plaintiff was subjected to

4    discrimination on account of sex in the imposition of university discipline, is

5    sufficient with respect to the element of discriminatory intent, like a complaint

6    under Title VII, if it pleads specific facts that support a minimal plausible inference

7    of such discrimination. Because *Littlejohn* was not decided until after the district

8    court made its decision in this case, and it had not yet been decided that the Title

9    VII *McDonnell-Douglas* framework applies to Title IX complaints, the district

10   court might not have anticipated that *McDonnell-Douglas*'s temporary

11   presumption in a plaintiff's favor reduces the plaintiff's pleading burden, so that

12   the alleged facts need support only a minimal inference of bias.

13       **b. Plaintiff's Title IX Claims**

14       Plaintiff's Complaint pleads sufficient specific facts giving at least the

15   necessary minimal support to a plausible inference of sex discrimination to survive

16   a Rule 12(b)(6) motion to dismiss, if Title IX's other requirements are met. It

17   alleges that Columbia's hearing panel (which erroneously imposed discipline on

18   the Plaintiff), its Dean (who rejected his appeal), and its Title IX investigator (who

19   influenced the panel and the Dean by her report and recommendation), were all

22

15-1536 (L)
John Doe v. Columbia University

1    motivated in those actions by pro-female, anti-male bias. Those alleged biased

2    attitudes were, at least in part, adopted to refute criticisms circulating in the student

3    body and in the public press that Columbia was turning a blind eye to female

4    students' charges of sexual assaults by male students.

5        Among the Complaint's allegations that support the inference of sex

6    discrimination are the following. Both the investigator and the panel declined to

7    seek out potential witnesses Plaintiff had identified as sources of information

8    favorable to him.[10] The investigator and the panel failed to act in accordance with

9    University procedures designed to protect accused students. The investigator, the

10   panel, and the reviewing Dean, furthermore, reached conclusions that were

11   incorrect and contrary to the weight of the evidence.

12       When the evidence substantially favors one party's version of a disputed

13   matter, but an evaluator forms a conclusion in favor of the other side (without an

---

[10] Columbia's proffered explanation that those witnesses were not sought out because they had no relevance to whether Plaintiff had coerced Jane Doe by unreasonable pressure during the preceding weeks does not justify the dismissal of the Complaint. This is so for two reasons. First, while a factfinder might ultimately determine that this was the true reason for not seeking out and interviewing these witnesses, it is also plausible that the failure to seek them out was attributable to discrimination, as the Complaint alleges. It is not the court's function in ruling on a motion to dismiss for insufficiency of the complaint to decide which was the defendant's true motivation. Second, it is not correct that the potential witnesses suggested by Plaintiff related exclusively to the events of the night of the sexual encounter and not to the preceding weeks. At least one was allegedly identified as a friend and potential confidante of Jane Doe's and not as a person who observed the interaction between John and Jane on the night of the encounter.

15-1536 (L)
John Doe v. Columbia University

1   apparent reason based in the evidence), it is plausible to infer (although by no

2   means necessarily correct) that the evaluator has been influenced by bias. Here, the

3   facts pleaded in the Complaint (which we must accept in the light most favorable

4   to Plaintiff) support John Doe's version (not surprisingly as they represent his

5   contentions). The Complaint's narrative depicts Jane Doe as an altogether willing

6   participant. It denies that Plaintiff coerced Jane and asserts that "no evidence was

7   presented" in support of the claim of coercion. A 114. The alleged fact that

8   Sessions-Stackhouse, and the panel and the Dean, chose to accept an unsupported

9   accusatory version over Plaintiff's, and declined even to explore the testimony of

10  Plaintiff's witnesses, if true, gives plausible support to the proposition that they

11  were motivated by bias in discharging their responsibilities to fairly investigate and

12  adjudicate the dispute.

13      While those allegations support the inference of bias, they do not necessarily

14  relate to bias on account of sex. Additional allegations of the Complaint, however,

15  give ample plausible support to a bias with respect to sex. As outlined above, the

16  Complaint alleges that during the period preceding the disciplinary hearing, there

17  was substantial criticism of the University, both in the student body and in the

18  public media, accusing the University of not taking seriously complaints of female

19  students alleging sexual assault by male students. It alleges further that the

24

15-1536 (L)
John Doe v. Columbia University

1    University's administration was cognizant of, and sensitive to, these criticisms, to

2    the point that the President called a University-wide open meeting with the Dean to

3    discuss the issue. Against this factual background, it is entirely plausible that the

4    University's decision-makers and its investigator were motivated to favor the

5    accusing female over the accused male, so as to protect themselves and the

6    University from accusations that they had failed to protect female students from

7    sexual assault.

8         Columbia argues that the pleaded facts do not support an inference of

9    intentional sex discrimination. It argues that the criticism of the University was for

10   not taking student complaints of sexual assault seriously, and that any motivation

11   on the part of the panel to demonstrate that it takes such complaints seriously is not

12   the same thing as a motivation to discriminate against an accused male student.

13   The district court stated that any bias in favor of Jane Doe "could equally have

14   been—*and more plausibly was*—prompted by lawful, independent goals, such as a

15   desire (enhanced, perhaps, by the fear of negative publicity or Title IX liability to

16   the victims of sexual assault) to take allegations of rape on campus seriously and to

17   treat complainants with a high degree of sensitivity." *Doe v. Columbia Univ.*, 101

18   F. Supp. 3d 356, 371 (S.D.N.Y. 2015). This reasoning fails to recognize the court's

19   obligation to draw reasonable inferences *in favor of* the sufficiency of the

15-1536 (L)
John Doe v. Columbia University

1   complaint. *Iqbal* does not require that the inference of discriminatory intent

2   supported by the pleaded facts be *the most plausible* explanation of the defendant's

3   conduct. It is sufficient if the inference of discriminatory intent is plausible.

4        The Complaint alleges that, having been severely criticized in the student

5   body and in the public press for toleration of sexual assault of female students,

6   Columbia was motivated in this instance to accept the female's accusation of

7   sexual assault and reject the male's claim of consent, so as to show the student

8   body and the public that the University is serious about protecting female students

9   from sexual assault by male students—especially varsity athletes. There is nothing

10  implausible or unreasonable about the Complaint's suggested inference that the

11  panel adopted a biased stance in favor of the accusing female and against the

12  defending male varsity athlete in order to avoid further fanning the criticisms that

13  Columbia turned a blind eye to such assaults.[11]

---

[11] It is worth noting furthermore that the possible motivations mentioned by the district court as more plausible than sex discrimination, including a fear of negative publicity or of Title IX liability, are not necessarily, as the district court characterized them, lawful motivations distinct from sex bias. A defendant is not excused from liability for discrimination because the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action. A covered university that adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex.

26

15-1536 (L)
John Doe v. Columbia University

1    The Complaint sufficiently alleges circumstances plausibly supporting a

2    similar motivation on the part of Sessions-Stackhouse. It alleges that she had

3    suffered personal criticism in the student body for her role in prior cases in which

4    the University was seen as not taking seriously the complaints of female students.

5    At the time Sessions-Stackhouse investigated Jane Doe's accusation of Plaintiff,

6    she knew that the University had been criticized for its conduct of investigations of

7    sexual abuse, and specifically accused of conducting the investigations in a manner

8    that favored male athletes and that was insufficiently protective of sexually

9    assaulted females. It is plausible that she was motivated to refute those criticisms

10   by siding with the accusing female and against the accused male.

11   Columbia further contends that bias on the part of Sessions-Stackhouse

12   cannot be actionable because she "was merely the investigator [and] did not sit on

13   the panel that found [Plaintiff] responsible for sexual misconduct." Defendant's Br.

14   at 33. It argues, "Because the purported procedural errors were made by someone

15   who did not participate in determining [Plaintiff's] responsibility, those errors are

16   insufficient to state [a claim]." *Id.*

17   The argument is not persuasive. Although Sessions-Stackhouse was not the

18   decision-maker, she allegedly had significant influence, perhaps even

19   determinative influence, over the University's decision. According to Plaintiff's

15-1536 (L)
John Doe v. Columbia University

1   allegations, Sessions-Stackhouse was appointed by Columbia to the role of Title

2   IX investigator with the expectation that her investigations and reports would

3   inform the University's decisions. The Complaint plausibly alleges that her report

4   advocating discipline influenced the University's decision to sanction John Doe.

5   The fact that Sessions-Stackhouse was not the decision-maker does not render sex

6   bias in her performance of her duties irrelevant to liability of the University.[12]

7        According to precedent under Title VII, a defendant institution is not

8   shielded from liability for discrimination practiced by an employee endowed by the

9   institution with supervisory authority or institutional influence in recommending

10  and thus influencing the adverse action by a non-biased decision-maker. *See*

11  *Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008) (holding that a plaintiff is

12  "entitled to succeed, even absent evidence of illegitimate bias on the part of the

13  ultimate decision maker," so long as a biased person endowed with institutional

14  influence "played a meaningful role in the process" (internal quotations and

15  alteration removed)); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)

16  (holding, in the context of the Uniformed Services Employment and

---

[12] We recognize that depending on the answers to questions regarding the status of the Title IX investigator in the Columbia hierarchy, the theory of bias on the part of Sessions-Stackhouse may be precluded by the standards enunciated in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998).

15-1536 (L)
John Doe v. Columbia University

1    Reemployment Rights Act, that when a supervisor performs an act motivated by

2    antimilitary animus intended to cause an adverse employment action, and the act

3    proximately causes that adverse action, the employer is liable notwithstanding that

4    the biased supervisor did not make the ultimate employment decision).

5         We conclude that the Complaint adequately pleads facts that plausibly

6    support at least the needed minimal inference of sex bias. *See Littlejohn*, 795 F.3d

7    at 311. Accordingly, we vacate the district court's dismissal of the Title IX claim,

8    and remand for further consideration. Our decision to reinstate the Complaint in no

9    way suggests that our court has any view, one way or the other, on the likely

10   accuracy of what Plaintiff has alleged. We recognize that the facts may appear in a

11   very different light once Defendant Columbia has had the opportunity to contest

12   the Plaintiff's allegations and present its own version. The role of the court at this

13   stage of the proceedings is not in any way to evaluate the truth as to what really

14   happened, but merely to determine whether the plaintiff's factual allegations are

15   sufficient to allow the case to proceed. At this stage, the court is compelled to

16   assume the truth of the plaintiff's factual allegations and draw all reasonable

15-1536 (L)
John Doe v. Columbia University

1   inferences in his favor. Following those rules, we conclude that the Complaint

2   sufficiently alleges that Columbia was motivated by sex bias.[13]

3                                    **CONCLUSION**

4         For the foregoing reasons, we **VACATE** the district court's judgment

5   dismissing the Complaint and **REMAND** for further proceedings.

---

[13] We also vacate the dismissal of the state-law claims asserted in the Complaint. The district court dismissed these claims without prejudice to their renewal in state court, on the theory that these claims were supplemental to the federal-law claims from which the court's jurisdiction derived. The Complaint, however, asserted diversity jurisdiction as well as federal question jurisdiction. The court will need to address the state-law claims on remand.